Mr. Ray, when you're ready. Good morning, and may it please the Court, my name is Patrick Ray, I represent the Appellant in this matter, Barry Graham Oil Services, LLC. This case presents a risk allocation dispute arising out of a classic tripartite oilfield contractual relationship. Barry Graham seeks defense intimidy and additional insured coverage for the personal injury claim of the plaintiff in the underlying action, Mr. John Willis. At its heart, this case presents a contractual arrangement that is fairly standard in the legal industry and which has been addressed by this Court and the lower courts for decades. A review of the contracts at issue shows a clear intent by the parties for each to assume the risk of injuries to its own employees. Now in reviewing the briefs in preparation for this morning, what I found most striking about the parties' arguments is what is not in the briefing submitted by Shamrock and Aspen, which I won't collectively refer to just as Shamrock. First, Shamrock offers no defense of the reasoning employed by the District Court in reaching its conclusion that Barry Graham is not a member of the third-party contractor group due to the lack of a direct contract between Fieldwood and Barry Graham. Instead, Shamrock offers its own reasoning for the District Court's conclusion, which was not advanced by Shamrock or the District Court and is directly contrary to the facts of the case. Second, Shamrock offers no interpretation of Section 13F.2 of its contract with Fieldwood, which requires Shamrock to obtain specific forms and amounts of insurance for the benefit of the third-party contractor group. It is upon this provision that Barry Graham's claim for coverage under Shamrock's policies is based, and Shamrock does not provide its explanation as to the meaning of that provision. Third, Shamrock fails to explain why the four District Courts within this circuit got it wrong when they found that a Marcell premium can benefit parties that did not actually pay it. These are the critical issues in this case, and Shamrock has declined to squarely address them. Instead, we read entire sections in Shamrock's brief arguing that Louisiana law applies to its contract and that Barry Graham had no direct contract with Fieldwood. Much of Shamrock's brief addresses irrelevant or uncontested issues because Shamrock seems unwilling or unable to tackle the relevant issues head on. Now, in my view, in order for Barry Graham to enforce its contractual rights, it must clear three hurdles at issue in this appeal. The first hurdle is the textual interpretation of the contracts at issue. Barry Graham's rights arise under the master service contract between Shamrock and Fieldwood, which require Shamrock to defend, indemnify, and procure insurance for the benefit of the third-party contractor group. In this case, Kilgore, which was the vessel broker, meets the definition of third-party contractor because it is another contractor of Fieldwood used by Fieldwood in connection with the work on the platform. The platform job required a vessel to bring supplies to the workers on the platform, and Fieldwood used Kilgore to procure that vessel. So Kilgore meets the definition of third-party contractor as defined in the master service contract between Fieldwood and Shamrock. As a subcontractor of Kilgore, Barry Graham falls within the third-party contractor group as defined in the master service contract. The district court ruled that Barry Graham was not a member of the third-party contractor group because, quote, there is no contractual relationship between Fieldwood and Barry Graham, close quote. This ruling is clearly incorrect under the definition of third-party contractor group within the MSC. It seems to me that the district court simply made an error in concluding that when the third-party contractor group says subcontractors of any tier, that meant a subcontractor of Fieldwood when the clear definition states the third-party contractor group and its subcontractors of any tier. So if Kilgore is a third-party contractor group and Barry Graham is a subcontractor of Kilgore, then Barry Graham is a member of the third-party contractor group. By definition, a subcontractor is not going to have a direct contract with the principal. A subcontractor is going to have an intervening contractor between itself and the principal. The district court's reasoning was not based upon any argument that was advanced by Shamrock, and Shamrock makes little effort to defend that reasoning in its briefing to the court. Shamrock has never argued that Barry Graham is not a member of the third-party contractor group because it lacks a direct contract with Fieldwood. It's made some other arguments that I will address later, but that was not one of them. As this textual issue is the basis for the district court's ruling, I will come back to it, but I first want to touch on the other two issues presented in this appeal. The second hurdle thrown up by Shamrock are the statutory provisions of the Louisiana Oilfield Anti-Indemnity Act. The parties agree that Louisiana law applies to the interpretation of the master service contract between Fieldwood and Shamrock. The parties also agree that Fieldwood paid the Marcell premium to avoid the provisions of the Anti-Indemnity Act. The issue in this appeal is whether Barry Graham may benefit from Fieldwood's payment of the Marcell premium. This involves two rather nuanced issues. One is a legal question, which is just the simple proposition of can a party that didn't pay the Marcell benefit from the payment of the Marcell. That is a race-novel issue before this court. As far as I'm aware, this court has never ruled upon it, but four district courts within the circuit, twice in the Eastern District of Louisiana and twice in the Western District of Louisiana, have all found that a party that did not pay the Marcell premium can benefit from that payment. The second issue is another textual interpretation of the contract, which I'll address in just one moment. But back to the legal issue, the universal conclusion by the district courts within this circuit is that payment of a Marcell premium does benefit other parties. In the Eastern District of Louisiana, that's the Durer and Borman cases cited in my briefing, and in the Western District of Louisiana, it's the Richard and the BJ Services cases cited in our briefing. In fact, Shamrock itself successfully advanced this argument in the Borman case, which was by its customer could benefit Shamrock. The reason that the district courts are uniform in this issue is that the intent and purpose of the Anti-Indemnity Act is set forth in the statute itself. The statute makes clear that it is intended to prevent the unfairness of burdening the cost and risk of injuries upon oilfield contractors by way of indemnity and insurance agreements. However, as this court made clear in Marcell, the act's intent is not frustrated when the indemnitor bears no cost of procuring insurance for the indemnity. So under Marcell, it does not matter who pays the Marcell premium. As long as the indemnitor does not pay it, then the purpose of the Anti-Indemnity Act is not frustrated. We respectfully urge this court to endorse the approach taken by the four lower courts that I mentioned and hold that payment of a Marcell premium as a legal matter can benefit parties other than the one that actually paid it. Now, the second issue on this point is that Shamrock makes a textual argument by arguing that Fieldwood paid the Marcell premium only on its behalf. However, the text of the Louisiana-specific provisions in Exhibit E to the Master Service Contract belie that argument. First, Paragraph 2 of Exhibit E clearly states that the payment is intended to extend all of Shamrock's policies to include coverage for Shamrock's indemnities. There is no limitation on those indemnities. So as long as this court concludes that an indemnity obligation in favor of Barry Graham flows from that Master Service Contract, then Exhibit E includes it in that Marcell payment. Second, halfway through Paragraph 2 of Exhibit E, the contract states, quote, the insurance policy shall apply to incidents arising out of the performance of any work under this contract. And so as long as this court concludes that Mr. Willis's accident arose out of Shamrock's performance of the contract, this language makes clear that Shamrock's insurance should cover it. Again, Shamrock has not argued that Mr. Willis's work to help unload the Barry Graham vessel was not performed pursuant to the Master Service Contract. Third, the last sentence of Paragraph 2 contains an express acknowledgment by Shamrock and Fieldwood that Paragraph 2 is meant to comply with Marcell and should be interpreted as  So the Master Service Contract contains an insuring agreement in favor of a third-party contractor group, and Section 2 of Exhibit E makes clear that it's the party's intent to comply with Marcell in all respects. So for these three reasons, the Marcell payment by Fieldwood benefits any potential indemnity of Shamrock, which includes Barry Graham. The court does not need to guess at the party's intent because it is set forth right there in Paragraph 2 of Exhibit E to the Master Service Contract. So from a practical standpoint, why would Fieldwood care? Why would Fieldwood want to pay this premium? It is because it could be on the hook and face exposure for this loss under the terms of the time charter with Kilgore if Shamrock doesn't cover it. So if you're Fieldwood, you want this liability to pass through you and to Shamrock because under the terms of the Master Time Charter, Fieldwood could be on the hook for this because Shamrock, as an invitee of Fieldwood, would qualify as what's referred to as the charterer's group in the Master Time Charter, and Fieldwood could owe indemnity to Kilgore and Barry Graham under that contract. So that's why Fieldwood would want to pay this premium to benefit any indemnities that Shamrock owed under the Master Service Contract. The third hurdle advanced by Shamrock is also statutory and found in the Longshore and Harbors Workers' Compensation Act. I respectfully submit that the LHWCA is simply a non-factor in this case. The Boisson case makes clear that the LHWCA has no impact on insuring provisions, and with respect to the contractual indemnity, 33 U.S.C. 905C provides an exception to the bar on contractual indemnity claims when the indemnity obligations are reciprocal. I won't repeat it all here, but as set forth in my principal brief, in the event of an injury to a Barry Graham employee, there is no doubt that Barry Graham would owe indemnity to Shamrock by way of the tripartite contractual arrangement. So, to get back to the contractual interpretation issue, which was hurdle one, Shamrock argues for the first time in this appeal that, well, Barry Graham is not a member of the third party to contractor group because Kilgore and Barry Graham were not hired by Fieldwood in connection with Shamrock's work. But that argument is simply belied by the facts of the case. Mr. Willis was helping to unload the Miss Tammy at the time of his accident. Mr. Willis was working pursuant to the master service contract, and the Miss Tammy was working pursuant to the master time charter and the brokerage agreement. And so, the parties are literally working in conjunction at the time of Mr. Willis'   Additionally, the master service contract contains appendix one, where Fieldwood checked the services it was looking for from Shamrock. One of those services is rigging. This is a classic rigging operation to load and unload a vessel. Mr. Willis was holding a tagline attached to the cargo that came straight off the Miss Tammy. It is crystal clear that Kilgore and Barry Graham's work was in connection to the work performed by Shamrock under the master service contract. This court does not have to reinvent the wheel here. I cited to one of the Eastern District of Louisiana's cases, the Durer case, which addressed this precise situation using the same Fieldwood contractual regime. And in that case, the district court found that the vessel owner, which was Rec Marine in that case, had stated a claim for defense indemnity and insurance coverage under the same contractual agreement. The only criticism offered by Shamrock of Durer is that, well, it's a Rule 12 motion, not a motion for summary judgment. But the analysis is there. The district court concluded that a claim for coverage and indemnity had been stated. And in reading Shamrock's brief, it reads as if this is just so unprecedented and so outlandish, and if it was so outlandish, then it would have been dismissed under Rule 12 by the district court in Durer. My time is almost up. Unless the court has any questions, I'll save the balance of my time for rebuttal. That's very thorough. Thank you. Thank you. All right. Mr. Rubion. Thank you, Your Honor. May it please the Court. Ross Rubion here on behalf of the appellee, Shamrock. I'll speak for the 15 minutes on the contractual issues here, and Ms. Durbin, Ms. Durbin on behalf of the appellee, Aspen, will speak on the insurance coverage issue. And Your Honors, the primary question before the Court is whether there is a third-party beneficiary obligation that Shamrock owes to Barry Graham for defense, indemnity, and additional insured obligation. And those are three separate obligations, and the Court needs to look at separate parts of the master services contract to answer each of those questions. Now the primary reasons are, first, the Louisiana Oilfield Anti-Indemnity Act bars the obligation here, and the Marcell exception does not save Barry Graham because, and the parties squarely disagree on the reading of Exhibit E, which is the Louisiana-specific provision. But in the Louisiana-specific provisions of Exhibit E, the obligation for Fieldwood to be able to pay the Marcell premium does not extend beyond company group. The Exhibit E specifically mentions the company group, and because of that reason, this Court need not reach the res nova issue of whether a third party may benefit from the payment of the Marcell premium. The contractual intent of the parties in Exhibit E makes it so that Fieldwood and Shamrock only agree that the premium would benefit company group. And if this Court does decide to reach a decision on the policy issues, Marcell, the Marcell exception is to encourage the parties to procure insurance, and here, Fieldwood paid for insurance, Fieldwood's contractual intent, Fieldwood and Shamrock's contractual intent should control what their insurance does. Here, they agree that their insurance would apply to the company group. And not only does the LOIA bar the obligation, but also the LHWCA bars the obligation. Respectfully, Your Honors, we squarely disagree with Barry Graham's statement that the LHWCA does not apply here, and I'll quote exactly what Mr. Wray said, Willis was holding a tagline attached to cargo that came off of the Miss Tammy. The principal demand in this case made by Willis is squarely a maritime tort. This is, yes, Your Honor? Oh, I thought you were going to ask a question. Apologies. Willis committed, Willis was injured by the deckhand's action on the vessel of the Miss Tammy. While the vessel, the Miss Tammy, is in the navigable waters of the United States, the Miss Tammy is undisputedly in the Gulf of Mexico, while a deckhand is operating on the deck of that vessel to attach a tagline to cargo. That cargo then is sent up to the fixed platform where the injury occurs. This is a straightforward application of the Admiralty Extension Act, which Congress passed so that injuries sustained on land, which here, fixed platform is land, the injury is sustained on land. But that principal demand that Willis brought against Barry Graham is a claim by an undisputed LHWCA-covered worker. Willis is an LHWCA-covered worker. He received an LHWCA-covered settlement. His claim against Barry Graham is for a maritime tort, and so this claim not only invokes the LOIA under state law, because each claim is governed by its own set of substantive law in this case. So, when the court is looking to what substantive law applies to the contract, the master services contract, state law does apply to the master services contract, because it's not a maritime contract under this court's decision in Ray Larry Dwarren. It's not for maritime services. So, the substantive law that applies to the contract is state law. But because Willis' principal demand invokes an Admiralty question, and here, Barry Graham even raised the shipowner's limitation of liability as a defense in the district court. So, it's a maritime tort. So, it also brings up the LHWCA as a substantive bar. Okay. The Voisin . . . The best case for that, I thought we had resolved that problem. Well, the best case for that would be this court can look to the Summerall case out of this circuit, which . . .  2002, I believe. I think we have been en banc on this problem since then. I believe there was an en banc decision on whether there's . . . In other words . . . I could be incorrect. But you agree that the master service contract covers the defense and indemnity claims, right? Yes, Your Honor. I agree with that. Okay. What I'm saying is that there's a separate question between which substantive law applies to the tort and which substantive law . . . Why do we care about that? We care about that because Congress enacted 905B, which stated that when there's a maritime tort, that it's going to invoke the LHWCA in 905. There is no dispute that Willows was injured on a fixed platform. Well, I don't have a . . . I mean, assuming that's all correct, how does that still affect the defense, indemnity, and insurance issues here? It is invoked because it's a maritime tort, and it brings up . . . Congress enacted the statute so that it would. It's in 905B where it says . . . 905B explicitly says that any defense or indemnity agreement where a vessel is purported to obtain defense and indemnity for an injury to an LHWCA-covered worker, it's 905B which explicitly says it. That's why it's relevant to the defense and indemnity issues. 905C would permit the obligations if they are reciprocal. We squarely disagree on whether there is a reciprocal obligation here. The reason why is because if this Court will look at Section 2 of the Vessel Boarding Agreement, which is the contract that Barry Graham signed, Barry Graham agreed to provide defense and indemnity to Kilgore. And if demand was ever made on Kilgore, then Barry Graham would jump in for Kilgore. Now, the problem with that is Kilgore and Barry Graham are distinct juridical entities and distinct juridical persons. Each may have separate claims and defenses available. Why couldn't Shamrock have made a demand on Kilgore? Shamrock could make a demand on Kilgore. That's correct, Your Honor. Okay. Shamrock could not make a demand directly on Barry Graham because in Barry Graham's Vessel Boarding Agreement, Barry Graham never agreed to extend a third-party beneficiary obligation to anyone beyond Kilgore, which it only agreed to extend an indemnity to Kilgore. So what would have to – so if we reverse the rules here where the Barry Graham employee is injured instead of the Shamrock employee, if the Barry Graham employee is injured, Shamrock has to tender Kilgore first, okay? And then the practical problem I'll raise to you is what if Kilgore is bankrupt? What if there's a collectability problem with Kilgore? Kilgore and Barry Graham are separate juridical entities. They're separate people. To say that, oh, it's reciprocal that you tender to Kilgore and I've got Kilgore, I don't disagree that the practical outcome of that in many situations would be that Shamrock receives a defense and indemnity, but in not all situations because Shamrock and Barry Graham are separate juridical entities, and like I mentioned, what happens if there's a problem with collectability with Kilgore? Does Barry Graham – is Barry Graham able to raise that defense? It's not the same. It's not an apples-to-apples cross-indemnity. Whereas if you look at section 13 of the contract, of the master services contract, so the pertinent provision of the contract for the court to read is section 13FIII, and I'll remind this court too, we decided in our brief, the Louisiana Supreme Court decision, Palazzolo, which says that on these textual issues, which we disagree with the reading of the contract in a few different ways with Barry Graham, but on these textual issues, the Louisiana Supreme Court has said that the indemnity for a party's own negligence, so this is a Barry Graham deckhand that committed the tort, indemnification for a party's own negligence is to be strictly construed. So, we would urge the court that the district court's decision was not incorrect because section 13FIII of the master services contract says two things, that for Shamrock to have made this third-party beneficiary promise to Barry Graham, there were two things that Barry Graham needed to have in return. And this is stated in that section of the contract. They needed a respective contract with Fieldwood, which they don't have. And I'm not disagreeing with Mr. Ray that it's industry standard that there's third-party contracts, but what I'm saying to this court is that's what the contract says. It says that they needed a respective contract with Fieldwood. It also says that they needed a substantially similar cross indemnification. Now, the district court took the first exit off of this highway and said there is not a respective contract with Fieldwood, and so granted Shamrock's motion for summary judgment. But if this court decides to look beyond that issue and to also look at whether there's a substantially similar cross indemnification, for the reasons I just explained to the court, Kilgore is not the same party as Barry Graham, and Kilgore standing in as Barry Graham's proxy in the reverse scenario is not substantially similar. And so there's no third-party beneficiary obligation that Barry Graham agreed to in its vessel boarding agreement, and so the obligations are not substantially similar. Finally, I'll turn to one of the points that I have not made yet, which is originally when I told the court that it's defense indemnity and additional insured obligation, and there are three separate obligations. The additional insured obligation is controlled by Section 14 of the Master Services Contract, and all of those obligations are made towards company group, and it's undisputed, I think, here that Barry Graham is not a member of the company group because the only definition that they might fit under company group is if they are an invitee, and under this court's decision in Knox, a vessel adjacent to a platform is not an invitee, and so Barry Graham is not a member of company group, and they are not entitled to any additional insured obligation. Aren't they a member of the third-party contractor group? Yes, Your Honor, they would fit the definition of a third-party contractor group, but they do not have either a substantially similar cross indemnification or a respective contract with Fieldwood, which is required by Section 13FIII of the Master Services Contract. And last, just to raise a point that was raised in oral argument, Mr. Ray brought up Section 13FII, which is the insurance support obligation. That is in the indemnity section of the Master Services Contract, and an insurance support obligation is not the same thing as an additional insured obligation, and this court can look to its previous decision in Holden, which stands for that proposition, and to flesh that out a little more fully, yes, there is an insurance support obligation in 13FII, but because there is no indemnification, so the party agreed, we promise to make certain indemnities, and we will support these indemnities with insurance. That's an insurance support obligation. That fails because the indemnity fails, because there's not a substantially similar cross indemnification. That's a separate question, and as this court said in Holden, that's a separate question as to whether there's an additional insured obligation. An additional insured is controlled by Section 14, which only extends to company group. And, Your Honor, I have a minute left. I'll briefly comment on the Durer case, which Barry Graham relies on heavily here. The Durer case contains no analysis of whether there is a substantially similar cross indemnity under these particular fieldwood contracts. I have no issue with Durer in large part, but Durer is not that helpful in ironing out all the issues in this case. It might be because Durer was decided on a 12B6 plausibility standard instead of a Rule 56 motion. And so, Your Honors, I have 40 seconds left. If there are any other questions remaining, otherwise, I'll go ahead and conclude. And, Your Honors, we respectfully request that this court affirm the ruling of the District Court, which granted Shamrock's motion for summary judgment and determined that Barry Graham is not entitled to any third-party beneficiary obligation from Shamrock. Thank you. Good morning. May it please the Court. I'm Tabitha Durbin, and I'm representing Aspen Syndicate 4711 at Lloyds. Aspen issued an insurance policy to appellee Shamrock. Barry Graham is not listed as an insured under the policy. And, as we explained in our briefing and as Mr. Rubion just discussed, there is no contract which required Shamrock to name Barry Graham as an additional insured under Shamrock's  In the absence of such an obligation, Barry Graham isn't an insured or an additional insured under the Aspen policy. But I just want to focus briefly for just a few minutes on an additional reason why there can be no insurance coverage for Barry Graham under the Aspen policy, even if the insured and that they do qualify as an additional insured under the policy. This was directly put at issue by Barry Graham in the appeal and in their brief on page 34. And, as my colleague on the other side suggested this morning, they are seeking a finding, a reversal of the District Court, and a finding that there is insurance coverage under the Aspen policy. And, I'll submit to the Court that there can never be any coverage under the policy. The District Court didn't get to that, is that right? The District Court didn't get to that, Your Honor, because it didn't have to. It found there was no obligation in the first instance. Because they're seeking reversal, if that is an issue that is decided in a different way, then the issue of coverage under the policy is relevant and has been put at issue by Barry Graham directly. But, the watercraft exclusion, even if Barry Graham qualifies as an insured, precludes coverage in this case. And, it expressly says that the insurance does not apply to bodily injury arising from the use or ownership of a watercraft that was owned or operated by any insured. And, I'll submit to the Court there is no dispute on either side that the requirements of the watercraft exclusion are met in this case. The underlying plaintiff, John Willis, was injured and the injury arose from the use of the vessel owned by Barry Graham. No one disputes that the watercraft exclusion requirements are met in the first instance. The only question that arises is whether a very limited exception to the watercraft exclusion applies here for liability assumed under insured contract. But, I'll also submit to the Court that the Fifth Circuit has already ruled that under the circumstances of this case, that exception does not apply. The liability assumed under insured contract exception applies only to the named insured claims, not those of an additional insured, like Barry Graham, seeking coverage for its own liability to the third person here to John Willis. The only attempt to distinguish Holden was a suggestion that the policy wording is not exactly correct, or not exactly the same in the Holden cases in the Aspen policy. And, I'll also submit to the Court that that's not correct. There are no material differences in the wording of the exception. The only difference is, in the Holden case, the definition of insured contract is spelled out and laid out in the exception itself. In the Aspen policy, the insured contract term is used, and then the definition is included in a separate definitional section. So, all the Court has to do is refer to that definitional section, and then the wording is the same. So, under the facts of Holden, the exception doesn't apply. The watercraft exclusion does apply. So, even if Barry Graham is an insured under the policy, there is no coverage under this case. The Court has no questions. Again, we'll request that the district court's ruling is affirmed, and that the dismissal of Aspen is upheld. We have your argument. Thank you. Thank you. All right. Mr. Ray, rebuttal. Very briefly, Your Honor. I'd like to start with Section 13F2 or II, which was misquoted by Mr. Rubion. Section 13F2 says that Shamrock is required to obtain the insurance set forth in Section 14. So, it references the insurance section of the Master Service Contract. For the benefit of the third-party contractor group, there is no explanation from Shamrock as to what that means other than what Barry Graham submits that it means, that the only benefit of insurance is coverage. And, therefore, Section 13F2 required Shamrock to procure insurance for the benefit of Barry Graham's third-party contractor group, which means coverage. That provision cites the insurance provision, which in turn cites the exhibit to the Master Service Agreement, which lists all of the insurance. And so, there is certainly an obligation on behalf of Shamrock to procure insurance for the third-party contractor group. I want to touch on the cross indemnities issue real quickly. Mr. Rubion referenced the brokerage agreement between Kilgore and Barry Graham, and I want to draw the Court's attention to Section 2. This is on page 17 of my reply brief, and the bold language there says, Operator, meaning broker, Kilgore, has assumed in any such time charter, including, but not limited to, all defense indemnity and insurance procurement obligations. So, the brokerage agreement requires Barry Graham to satisfy all of the obligations imposed upon Kilgore in the Master Time Charter. So, that is why Shamrock would be owed indemnity directly from Barry Graham in the event of an injury to a Barry Graham employee. It's not triggered by a demand. That language is just inserted by Shamrock into this contract. It does not say that. And remember, it includes the insuring provisions. And so, if Barry Graham is to assume Kilgore's insuring obligations, and that has to wait on a demand, well, by that point, it's too late. You have to have insurance at the time of the accident. So, that interpretation doesn't make any sense. So, there is certainly reciprocal indemnities necessary to trigger Shamrock's obligations under Section 13F to Barry Graham, including the defense indemnity and insuring obligations. With respect to the insurance questions, there were two motions that were mooted by the District Court's ruling on the motions that are now on appeal. So, if the Court rules in Barry Graham's favor, we will have to go back to obtain rulings on those motions. I did address them briefly in my reply, out of an abundance of caution. But if Shamrock owes the defense indemnity and insuring obligations here, then the Master Service Contract is an insured contract, and any liability assumed by Shamrock under that contract is excluded from the Watercraft Exclusion. I just wanted to briefly touch on that. Finally, there was, right at the outset, Mr. Rubion said there was no intention to create a third-party beneficiary relationship with respect to a party like Barry Graham. Section 13F III says very clearly the parties intend to create a third-party beneficiary obligation of Shamrock in favor of such other third-party contractors and any such third-party contractor group. It's crystal clear in the contract the third-party beneficiary obligation was intended. It's set forth clear as day throughout the contract. Again, as is common in oilfield contracts, the intent of the parties is that each entity working out on that platform takes on the risk, to the extent possible, of injuries to its own employees. That's clearly the intent of Shamrock and Fieldwood in the Master Service Agreement. We respectfully request that the Court reverse the district court, render judgment in Barry Graham's favor on its motion for summary judgment, which, as I mentioned, will require us to go back and have Aspen's motions ruled upon. Thank you. All right. So thank you very much. It's an interesting case. The Court will be in recess until 9 o'clock tomorrow morning.